IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANNY RAY HORNING,

    Petitioner,

vs.

VINCENT CULLEN, Acting Warden Ca. State Prison at San Quentin,

    Respondent.

No. CIV S-10-1932 JAM GGH DP

**DEATH PENALTY CASE**

ORDER

*Introduction and Summary*

Petitioner in this death penalty case seeks to toll (extend) the AEDPA limitations period for equitable reasons prior to expiration of the limitations period. Those reasons are twofold: (1) one counsel's eye affliction which lasted approximately 30 days; (2) the very recent discovery of a letter, apparently not written by petitioner but by a relative, which stated that petitioner was not the person who committed the murder for which petitioner was convicted. The latter reason warrants equitable tolling of the AEDPA limitations period for a period of sixty days.

\\\\\

\\\\\

*Discussion*

For the purposes of this motion, all have agreed that the one year limitations period of 28 U.S.C. § 2244(d)(1)(A) expires on May 12, 2011.[1] Counsel for petitioner (two) were appointed in July 2010. The undersigned has no reason to believe that counsel have not been diligently pursuing the filing of a petition.

One of petitioner's counsel (Ms. Gardner) began to have serious eye problems in January 2011. While not causing an inability to see, her eyes have been irritated, swollen, and the like causing it to be difficult to maintain reading for long periods of time. As described by counsel: "For approximately one month, Ms. Gardner's opthamalogical problems have been a source of irritation and distraction. This problem slowed her progress in reviewing the record and necessitated frequent breaks to rest her eyes and to administer medications throughout the day." Motion at 10. Ms. Gardner also related that the condition caused other interruptions such as doctor and pharmacy visits and took her away from her share of the petition preparation duties.

Unrelated to this temporary eye condition was the recent disclosure of a letter written by Jerry Horning in 1995 (shortly after petitioner had been sentenced to death) placing the blame for the murder pertinent to this case on Steven Horning, not petitioner Danny Horning. This letter, which referenced another murder as well, was in the possession of the Soledad Police Department. The discovery of this letter, which *at this time appears to have been unknown to both parties herein until February 2011*, may well have come to light as a result of petitioner's counsels' investigative actions in early February 2011. Ultimately, respondent's counsel was given the letter at issue by the Soledad Police Department, and state counsel quickly notified petitioner's counsel of the letter.

The letter could be related to ineffective assistance of counsel claims already adjudicated in state court, or new claims to be asserted, including a stand alone actual innocence

---

[1] Petitioner made a clerical error on page 6 of the motion in using the year 2010.

claim. Of course, if accepted in its entirety, the letter would exonerate petitioner from the crime for which he was sentenced to death. Many questions exist about the letter at this time such as: the letter's authenticity, the basis for the statements made in the letter, potential bias of the author to exonerate one relative at the expense of another, the potential availability of the information in the letter to trial counsel despite the fact that the letter itself was not written until after trial, why the letter was not disclosed until the present time. Petitioner's counsel declare that they need time to investigate this letter for use in the upcoming federal petition, and that the present May deadline for the petition will not give them sufficient time.

The parties assume that a court may toll (extend) a limitations period prior to its expiration, as opposed to a tolling after it has expired. Authority on the subject was not ascertained by the parties or the undersigned. In the absence of a dispute by the parties, the undersigned will assume that he may act prior to the expiration of the limitations period.

Two circumstances must exist before the AEDPA statute of limitations can be equitably tolled: (1) petitioner must have been acting with diligence generally in attempting to bring a timely petition, and specifically, must have been diligent, if possible, in having unearthed the new evidence which needs to be investigated at this late date; (2) the circumstance causing the late filing must be an extraordinary, external-to-petitioner type situation. <u>Lakey v. Hickman</u>, --F.3d--, 2011 WL 451958 *4 (9th Cir. 2011) citing, among other cases, <u>Holland v. Florida</u>, –U.S.–, 130 S.Ct. 2549, 2562 (2010) and <u>Pace v. Duglielmo</u>, 544 U.S. 408, 418, 125 S.Ct. 1807 (2005). Extraordinary is not to be watered down so that tolling becomes the rule instead of the rare exception. <u>Miranda v. Castro</u>, 292 F.3d 1063, 1066 (9th Cir. 2002).

Whether a circumstance is extraordinary should also take into account the fact that the AEDPA limitations period is a year long, and even longer if certain conditions are met, such that reasonably foreseeable disruptions will not generally excuse a petition to be filed untimely. While sickness of counsel can certainly be an extraordinary circumstance, if its duration and timing is such that it should not cause a delay in timely filing, it becomes an ordinary, foreseeable

event which will not permit equitable tolling.  All counsel will have events in their lives which might cause a disruption in what had been planned to be accomplished in a particular case, e.g., a five week jury trial in another case, a family problem or event, a pre-paid vacation, and the like.  These rather common occurrences, even if unfortunate and specifically unexpected, cannot generally be termed "extraordinary."  Moreover, the more time that is left in the AEDPA limitations period at the conclusion of the event, the less likely that it can be said that the event caused anything in the way of preparation disruption.  See Lakey, supra, Ramirez v. Yates, 571 F.3d 993, 998 (9th Cir. 2009).

Thus, it cannot be said that a one month partial disruption caused by an eye problem, which ended four months prior to the expiration of the AEDPA one year limitations period, and in a case in which two counsel were appointed, is extraordinary.  The undersigned understands that counsel will often separate duties in order to be efficient; however, when one counsel goes down for awhile, the other one will simply have to step up and play a larger role.  "Extraordinary" here means an almost practically impossible circumstance which will prevent timely filing.

The letter situation of this case is a different matter.  Through no fault of their own, and while diligently investigating the case, a heretofore unknown letter was belatedly discovered.  The letter, a facial assertion demonstrating actual innocence, is potentially very important to a fair adjudication of any petition, federal or state.  Determining whether the letter can be a good faith focal point of a claim, or simply another disappointing (for petitioner) dead end, will take investigation.  And, due to the spread out locale of the investigation, and the multiple sources of contact, it is not reasonably possible to complete this investigation in the two months of the limitations period remaining at this time.

The undersigned emphasizes that "investigation" does not mean that one has to have the claim fully proven in order to state it.  Once a petitioner can state a claim in good faith,

\\\\\

the McFarland[2] investigation should give way to the procedures utilized in state court on exhaustion to fully develop the claim. It is not McFarland's purpose for the federal courts to present a fully developed claim for state court adjudication; such a development would turn federal habeas corpus on its head as federal courts should be adjudicating facts fully developed in state petitions whenever possible. See Calderon v. USDC (Nicolaus), 98 F.3d 1102, 1106 (9th Cir. 1996).

Respondent argues that no tolling of the present period is necessary in that § 2244(d)(1)(D) provides that the AEDPA one year limitations period does not even start until the factual predicate of the claim could have been known in the exercise of due diligence. Having that year not even commence until February 2011, according to respondent, should give plenty of time. However, upon examination, the superficially appealing argument fails. First, it is not possible to know whether investigation of the letter will lead to a *new* claim, or will simply be important evidence, or not, for a claim already known. If the latter, the letter will not stand as a basis itself (probably) to invoke § 2244 (d)(1)(D). Secondly, there is no efficiency in mandating that the bulk of the federal petition be presently set forth, leaving an unstated string of potential claims that may, or may not, be added later. If one is going back to state court for a second exhaustion, which may well be the case as federal capital case counsel always manage to find new claims, this is inefficient enough. Respondent's idea would necessitate a *third* trip back to state court when the letter was finally sufficiently developed to be made the basis of an actual innocence claim.

*Conclusion*

For all of the above reasons, petitioner's motion to equitably toll the AEDPA limitations period (docket # 13) is granted on the basis of the newly discovered letter. The undersigned finds that an extension of 60 days should be sufficient to perform a good faith

---

[2] McFarland v. Scott, 512 U.S. 849, 114 S.Ct. 2568 (1994).

5

1 investigation.  However, not only must the petition be filed no later than July 11, 2011, any
2 motion/stipulation to stay the federal petition pending exhaustion must be filed by that time as
3 well.

DATED: March 21, 2011                    /s/ Gregory G. Hollows
                                         _____
                                         UNITED STATES MAGISTRATE JUDGE

horning1932.ord