1

2

3

4

5

6

7

8    IN THE UNITED STATES DISTRICT COURT

9    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DANNY RAY HORNING

11              Petitioner,                    No.  2:10-cv-1932 JAM GGH

12                                             DEATH PENALTY CASE
          vs.
13

14   KEVIN CHAPPELL
                    Respondent.
15

16   _____/

17   *Introduction and Summary*

18              Petitioner requests that the <u>Rhines</u> exhaustion stay entered in this case be lifted

19   temporarily in order that a new juror misconduct claim, allegedly discovered after entry of the

20   <u>Rhines</u> stay, be attached to the stayed petition while exhaustion continues on the newly discovered

21   claim.  For the reasons set forth below, petitioner's request is granted.

22   *The New Claim*

23              It is not the purpose here to adjudicate the merits of the new claim, but a short

24   description is in order to determine whether the claim is colorable.  Juror contact information for

25   this 1994 capital trial only recently became available, the information having been protected by

26   court order for decades.  More will be said about the discovery of this information in the

1

1  procedural facts section.  Suffice it to say that petitioner alleges that a juror gave false information

2  during the voir dire phase of the case insofar as he did not relate that he was employed by the

3  Stockton Record (the trial was held in Stockton), and that he failed, when asked, to relate that he

4  had a personal connection with a decedent in an unrelated capital case, and that he was a "criminal

5  case follower" because he was very interested in this case.  Petitioner asserts that the juror gave

6  this false information in order to serve on this jury, i.e., he thought he might be challenged if he

7  gave the true information.  Petitioner would draw the inference, therefore, that this juror who "had

8  to serve" was a prosecution oriented juror and biased.  See generally Hamilton v. Ayers, 583 F.3d

9  1100, 1107-1109 (9th Cir. 2009) (discussing, among other things, Dyer v. Calderon, 151 F.3d 970,

10 979 (9th Cir. 1998) (en banc) (the case of the "overly zealous" juror).  The claim as presently

11 posited is neither a certain winner nor is it frivolous; it should be termed initially colorable.

12 *Pertinent Procedural History*

13          This capital case was initiated on July 21, 2010 with a request for appointment of

14 counsel and a request for stay of execution.  Later proceedings resulted in an equitable tolling of

15 the statute of limitations on account of newly discovered evidence so that a fully informed petition

16 could be filed at a later time.  That petition was filed on July 11, 2011, and a request for a Rhines

17 stay[1] was concurrently made primarily on the assertion of an actual innocence claim (a Horning

18 sibling committed the murder).  That stay was issued on January 19, 2012.

19          Petitioner now alleges that during the course of the stay (the state exhaustion

20 petition remains pending), he once again has discovered new evidence; this time the evidence

21 relates to juror misconduct during voir dire.  While one could be skeptical at this juncture of the

22 seemingly endless pit of "new evidence" in this case, the facts do not warrant that skepticism.

23

24          [1]Rhines v. Weber, 544 U.S. 269, 125 S.Ct. 1528 (2005).  Rhines permitted a mixed
       petition to be stayed pending exhaustion of unexhausted claims.  This type of stay obviated the
25     problem of dismissing mixed petitions with attendant statute of limitations problems because a
       dismissed without prejudice petition is as if no petition had ever been brought for limitations
26     purposes.

                                                        2

1    During the record correction process on direct review, the Attorney General moved

2  the San Joaquin Superior Court for a protective order, precluding any party from contacting a juror

3  who had sat in the case.  The order was issued by Judge William Giffin on June 1, 2000.  After

4  direct review had been completed, and during the state habeas process afterwards, petitioner's then

5  habeas attorney (Karl) petitioned the Superior Court to vacate the juror protective order.  This

6  request was denied on September 8, 2008.  A motion for reconsideration was filed requesting the

7  release of juror information and that the court query the jurors to see if they would be willing to

8  discuss the case with petitioner's counsel.   A new judge assigned to the case, Judge Agbayani,

9  disclosed to the parties that juror records for the case had been purged, and he was mulling certain

10 options which might aid the ability to acquire juror information.  However, the judge reiterated in

11 no uncertain terms, even as late as January 29, 2010, that the protective order prohibiting juror

12 contact was still in effect.

13    Somehow, even though juror records had been purged, Judge Agbayani was able to

14 contact the jurors with a request for them to indicate whether they would permit contact by

15 petitioner's counsel.  Of those who responded (8), the desire not to be contacted was unanimous.

16    It was not until federal habeas counsel were involved in yet another motion for

17 reconsideration that the Superior Court determined on August 25, 2011 that there really was no

18 extant reason for leaving the protective order in effect, and it was vacated.  Subsequent

19 investigation by petitioner's counsel led to the motion to amend at issue here with respect to juror

20 misconduct.  Petitioner has not awaited this court's ruling to commence the state exhaustion

21 process on this juror claim, and such is pending presently before the California Supreme Court.

22 *Discussion*

23    The parties spend some time briefing the application of Fed.R.Civ.P. 15

24 (amendments to pleadings).  However, because a federal capital case has scheduling not

25 contemplated in the ordinary civil case, or even the non-capital habeas case, the applicability of

26 Fed.R.Civ.P. 81(a)(4) (use of civil rules in habeas to the extent not inconsistent with habeas law

3

1  and has conformed to the practice in civil actions),  and hence the applicability of Rule 15 itself, is

2  in doubt.[2]  Having so stated, however, the guiding principles permitting amendments in civil cases

3  can be applied within the specific context of a capital habeas case.  See e.g., Waddy v. Coyle, 2012

4  WL 2711461 (S.D. Ohio 2012).

5          The amendment principles, although often based on a formulaic factor test,[3] boil

6  down to one sentence-- do not deny amendment unless there is a good reason to do so.  "'Not

7  surprisingly, denying leave to amend, absent articulable reason, is "not an exercise of discretion"

8  but rather "abuse of ... discretion."  Lone Star Ladies Inv. Club v. Schlotzsky's Inc., 238 F.3d 363,

9  367 (5th Cir. 2001) cited with approval, Eminence Capital LLC v. Aspeon Inc., 316 F.3d 1048,

10  1052 (9th Cir. 2003).  Leave to amend should be granted with "extreme liberality," id at 1051, with

11  prejudice to the party opposing amendment as the most important factor.  Id. at 1052.  Delay in

12  seeking to amend can be considered as a factor denying amendment, but the delay should have

13  some unfair impact (prejudice) on the ability of the party to defend on the merits, e.g., evidence

14  missing, much expense and labor in litigating wasted by going back to "square one," with an

15  _____

16  [2]Much of Rule 15 is predicated on the norm in ordinary civil cases.  A short and concise
complaint is filed, and then an answer or other responsive pleading generally is filed early on in
17  the litigation. Whether one can "amend as of right," Rule 15(a)(1) is determined with those filing
times in mind.  Diligence in seeking leave to amend is often gauged by the close of pleadings and
18  specific orders at a scheduling conference held early on in the litigation.  In capital habeas, the
petition (complaint) is anything but short and concise, and must itself justify the existence of
19  claims.  Often a responsive pleading is put off far into the future because of exhaustion
proceedings, and many capital habeas cases are stayed pending exhaustion of further claims.  An
20  answer in habeas is not simply an admission or denial of facts set forth in a complaint, but is
more akin to a cross-motion for summary judgment.  So, for example, applying in capital habeas
21  Rule 15(a)(1)(B)'s permitting an amendment as of right twenty-one days after a responsive
pleading is filed is not a good fit and unduly delays capital habeas proceedings.  Thus, the "right"
22  to amend in capital habeas proceedings is justified based on the chronology of a capital case, and
the circumstances permitting amendment in capital habeas cases are largely determined by the
23  pre-answer procedural context.  Capital cases can be distinguished from non-capital habeas
cases for which the Ninth Circuit has held Rule 15 applicable.  See James v. Giles, 221 F.3d
24  1074-78 (9th Cir 2000).

25  [3]Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227 (1962) (setting forth five criteria: undue
prejudice to opposing party, undue delay, improper motive, e.g., stall, on part of the moving
26  party, repeated failure to cure deficiencies, and futility of amendment).

1 amendment.

2     Applying these principles to the present situation, it is clear that amendment should
3 be permitted, i.e., there is not a good reason to deny amendment.  First, petitioner, through his
4 various state and federal habeas counsel have diligently sought to have vacated the juror contact
5 preclusion order that was initiated *at the behest of respondent and his counsel (the State of*
6 *California and the Attorney General)*.  The undersigned is not being critical of the Attorney
7 General for seeking such an order; there may have been good reason for it at the time.  But fair is
8 fair– one cannot seek an order precluding juror contact, obtain that order, and then assert that
9 petitioner is at fault for not having that order overturned more quickly than it was.

10     Moreover, it is difficult for respondent to claim that it is prejudiced by the late
11 bringing of the claim when the State played the major part in not permitting the facts of the alleged
12 juror misconduct to come to light until recently.  And, petitioner has accompanied the request to
13 amend with a declaration by the allegedly errant juror; this juror appears to have a sufficient
14 recollection of the essential facts.  The facts related by the juror are of the type that are probably
15 subject to confirmation or repudiation by contacting other sources, e.g., the Stockton Record.
16 Respondent should be able to investigate the claim and take what actions are appropriate in
17 defense, i.e., the ability to defend has not been prejudiced.

18     The merits of the claim have yet to be litigated.  Petitioner asserts that this juror
19 purposefully withheld facts which might have caused the juror to be challenged for cause in that he
20 desired to be on the jury too much, and knew that if he answered the questions truthfully and
21 completely, he might well not have served on the jury.  As previously mentioned, this leads to the
22 inference, at least one inference, that he was a juror biased in favor of the prosecution.  Because the
23 claim is colorable, leave to amend should be granted on this basis as well.  And with reference to
24 the procedural facts, it is unlikely that the AEDPA limitations period *as calculated under the*
25 *appropriate section*, will bar this claim.  See 28 U.S.C. § 2244(d)(1)(B) and (D).

26     Finally, the court notes that petitioner has shown good faith in requesting the

5

1   amendment because, contemporaneous to the request, petitioner is already seeking to exhaust this

2   claim in the state supreme court.  Petitioner is not taking the one ponderous step at a time approach

3   in this capital habeas case, i.e., seek to amend, await the order, amend the petition,-- then go over

4   to state court, which some attorneys in the undersigned's experience are wont to do.  Rather, in all

5   likelihood, the state resolution of the previous actual innocence claim sent back for exhaustion will

6   be accompanied by a ruling on the juror misconduct issue as well.

7               For the above reasons, it is appropriate to allow the requested amendment to the

8   petition.

9   *Conclusion*

10              Accordingly, IT IS HEREBY ORDERED:

11              1.  The stay previously ordered in this case is lifted temporarily only in respect to

12   allow the filing of an amended claim;

13              2.  Petitioner's motion to strike (Docket # 45) respondent's opposition to the motion

14   to temporarily lift stay etc. is denied;

15              3.  Petitioner's request to amend the petition contained within the Motion to

16   Temporarily Lift Stay etc. (Docket # 43)is granted;

17              4. The petition in this case (Docket # 26) is amended to contain Claim 10 G as set

18   forth in the Motion to Temporarily Lift Stay etc., (Docket # 43), and it is deemed served upon

19   respondent;

20              5. In all respects, after the filing of this order, the stay ordered by Judge Mendez

21   (Docket # 41) remains in effect;

22              6. This order resolves Docket # 43 as well as Docket # 45.

23

24   DATED: October 5, 2012

25                              /s/ Gregory G. Hollows
                         UNITED STATES MAGISTRATE JUDGE
26